1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11 | ANTHONY REED, on behalf of herself and | CASE NO.  8:21-cv-01846-JLS-ADS
   | all others similarly situated,

12

13 |                    Plaintiffs,

14 |          v.                              | **ORDER (1) GRANTING PLAINTIFF'S
   |                                          | MOTION FOR PRELIMINARY
15 |                                          | APPROVAL OF CLASS ACTION
16 | BALFOUR BEATTY RAIL, INC.;               | SETTLEMENT (Doc. 39); AND (2)
   | BALFOUR BEATTY                           | SETTING A FINAL FAIRNESS
17 | INFRASTRUCTURE, INC.; BALFOUR            | HEARING DATE FOR JUNE 16, 2023
18 | BEATTY CONSTRUCTION COMPANY,             | AT 10:30 A.M.**
   | INC.; BALFOUR BEATTY
19 | CONSTRUCTION, LLC; BALFOUR
20 | BEATTY CONSTRUCTION GROUP,
   | INC.,
21
22 |                    Defendants.

23

24

25

26

27

28

Before the Court is Plaintiff Anthony Reed's unopposed Motion for Preliminary Approval of Class Action Settlement. (Mot., Doc. 39; Mem., Doc. 39-1.) Reed asks the Court to (1) grant preliminary approval of the proposed class action settlement, (2) conditionally certify the Settlement Class for settlement purposes only, (3) appoint Outten & Golden LLP as Class Counsel, (4) approve the proposed Notice of Proposed Settlement of Class Action Lawsuit and Claim Form, (5) set deadlines for submitting Claim Forms, written exclusions, or objections to the settlement, and (6) schedule a hearing on the final approval of the settlement. (Mem. at 8-9.) On September 12, 2022, the Court requested supplemental briefing regarding: (1) the selection of a Settlement Administrator; (2) whether a claims process is appropriate here; (3) whether requiring class members to opt out via regular mail and not electronic submissions is appropriate; and (4) why Legal Aid at Work is an appropriate *cy pres* recipient of unclaimed settlement funds. (Doc. 42.) Reed filed the supplemental briefing on October 12, 2022. (Supp'l Mem., Doc. 45.) Having read and considered the papers, the Court finds this matter appropriate for decision without oral argument and the hearing set for January 13, 2023, at 10:30 a.m. is VACATED. For the following reasons, the Court GRANTS Reed's Motion and sets a Final Fairness Hearing for **June 16, 2023 at 10:30 a.m**.

I.    **BACKGROUND**

Defendants Balfour Beatty Infrastructure, Inc., Balfour Beatty Rail, Inc., Balfour Beatty Construction Company, Inc., Balfour Beatty Construction Group, Inc., and Balfour Beatty Construction, LLC (collectively, "Balfour") are subsidiaries of a United Kingdom entity, Balfour Beatty plc. (Compl. ¶¶ 15–18, Doc. 1-1.) Plaintiff Anthony Reed is a resident of Solano County, California. (*Id.* ¶ 20.) On or about June 4, 2020, Plaintiff alleges he was offered a position with "Balfour Beatty Rail," and was given a disclosure form requesting consent for a background check which, he contends, did not comply with the Fair Credit Reporting Act ("FCRA") and the California Investigative Consumer

Reporting Agencies Act ("ICRAA"). (*Id.* ¶¶ 21–23.) Specifically, Reed alleges he was given a five-page form which contained a state-specific form for states which were mostly inapplicable to Reed, a form labeled "A Summary of Your Rights under the Fair Credit Reporting Act," and a reference to a form, which was absent, which would inform him of his rights under California law. (Mem. at 9). He argues that this form violated the FCRA, the ICRAA, and California's Unfair Competition Law ("UCL") because it did not provide a "clear and conspicuous" standalone disclosure that Balfour would run a background check. (*Id.*) *See also* 15 U.S.C. § 1681b(b)(2)(A); Cal. Civ. Code § 1786.16(a)(2); *Gilberg v. Cal. Check Cashing Stores, LLC*, 913 F.3d 1169, 1174 (9th Cir. 2019) (noting that as to the standalone and clear and conspicuous provisions, "the ICRAA and FCRA provisions are identical").

Reed filed a Class Action Complaint "on behalf of himself and all others similarly situated" in Orange County Superior Court on August 13, 2021. The Complaint contains claims for relief under the FCRA, the ICRAA, and the UCL. (Compl. ¶¶ 38–51.) On November 5, 2021, Defendants removed the action to this Court. (Notice of Removal, Doc. 1.) On November 10, 2021, the parties filed a joint stipulation to stay the case pending mediation. (Joint Stip., Doc. 13.) On March 4, 2022, the parties filed a joint status report informing the Court that the parties "ha[d] reached a resolution in principle to resolve the matter after attending mediation on February 7, 2022." (Joint Status Report at 2, Doc. 32.) On or about June 2 and 6, the parties executed a Settlement Agreement and Release ("Settlement Agreement"). (Doc. 39-3.).

On June 6, 2022, Reed filed the Motion for Preliminary Settlement Approval presently before the Court, and Defendants thereafter filed their Notice of Non-Opposition.

The Settlement Agreement sets forth that:

> applicants of Balfour Beatty Construction and other original affiliated companies included as Defendants in the action are not included in the settlement because pre-mediation discovery showed that Balfour Beatty Construction applicants were provided disclosure and authorization documents which were

3

1    materially different from the documents provided to Balfour
2    Beatty Infrastructure applicants, do not support the allegations
     made in the Complaint with respect to the documents previously
3    used by Balfour Beatty Infrastructure, and which do not have the
     same alleged defects as the Balfour Beatty Infrastructure
4    documents.

5    (Settlement Agreement § 8.E.)

6        The Settlement Agreement describes the Settlement Class, which consists of "all

7    U.S. resident individuals who were subject to a consumer report prepared for employment

8    with Balfour Beatty Infrastructure, Inc. between August 13, 2019 and February 28, 2022."

9    (Settlement Agreement § 1.GG.)  Within that class is the California Settlement Class, "the

10   subset of Settlement Class Members who in California were subject to a consumer report

11   prepared for employment with Balfour Beatty Infrastructure, Inc. between August 13, 2019

12   and February 28, 2022."  (*Id.* § 1.C.)  Defendant Balfour Beatty Infrastructure ("BBI")

13   estimates that there are fewer than 500 Settlement Class members, around 120 of whom

14   are located in California.  (*Id.* § 9.B.)

15       Notice describing the claims, the terms of the Settlement Agreement, and how to

16   receive a settlement check, opt out, object, and/or appear at the fairness hearing will be

17   distributed by the Settlement Administrator within 14 days of receiving the class list from

18   BBI.  (*Id.* § 4.C.)  Class members will have 60 days to submit claims forms, and can

19   submit them via mail, email, fax, or website.  (*Id.* § 4.E.)  Halfway through the notice

20   period the Settlement Administrator will send a reminder notice to class members who

21   have not submitted a claim form.  (*Id.* § 4.F.)  Class members choosing to opt out will have

22   60 days to do so and may do so via regular mail, email, or fax.  (*Id.* § 5.A–B; Settlement

23   Agreement Addendum, Doc. 45-4.)  Class members will also have 60 days to object to the

24   settlement, and must do so by mail.  (Settlement Agreement § 6.A–B.)

25

26

27

28

The terms of the Settlement Agreement establish that BBI agrees to pay a maximum amount of $350,000, contingent on the accuracy of the class size estimate.[1]  (*Id.* § 9.A.) This amount comprises settlement administration costs of up to $20,000 and a $330,000 settlement fund.  (*Id.*)  Any administration costs exceeding $20,000 will be deducted from the settlement fund prior to payments to the class members.  (*Id.* § 3.B.)  The parties have selected American Legal Claim Services ("ALCS") as the Settlement Administrator after a competitive bidding process.  (Supp'l Mem. at 1.)  ALCS will be responsible for, *inter alia*, disseminating notice and claim forms to class members, distributing settlement checks, and promptly notifying counsel of any objections and requests for exclusion. (Settlement Agreement § 3.B.)

Payments to class members are to be determined by the following formula: individuals who submit timely claims are paid an amount determined by dividing the net settlement fund by the number of claimed shares of the settlement fund.  Settlement Class members are entitled to one share of the settlement fund, and California Settlement Class members are entitled to nine additional shares.  (*Id.* § 9.3.A.)  Reed asserts that "after deducting attorneys' fees and the Service Award, and without accounting for the claims rate" the settlement will provide payments of approximately $133 for non-California Settlement Class members and $1,329 for California Settlement Class members.  (Mem. at 23.)  The Settlement Agreement indicates that "[c]lass counsel will petition the Court for an award of attorneys' fees of up to one-third of the Settlement Fund, plus reimbursement of actual litigation expenses and costs, all of which are to be paid from the Settlement Fund."  (Settlement Agreement § 9.1.A.)  It also provides that "Named Plaintiff will apply to the Court to receive up to Ten Thousand Dollars ($10,000) as a Service Award."  (*Id.* § 9.2.A.)

---

[1] The parties agree that variations within 5% of the class size estimate will not impact the Settlement Agreement, but variations greater than 5% will result in "proportional increases in the Settlement Fund in an amount in proportion to the number of members above that threshold." (Settlement Agreement § 9.B.)

Any funds not claimed, including checks not cashed after 90 days following the issuance of checks to class members, will be used first to reimburse BBI for settlement administration costs, and then will be distributed to a *cy pres* recipient unless the funds are substantial enough to warrant a second round of distributions to class members who have cashed their checks.  (*Id.* § 9.D.)  The parties have selected Legal Aid at Work as the *cy pres* recipient of undistributed funds.  (*Id.* § 1.J.)

Class members who do not opt out will release "all claims of any kind including damages, injunctive relief, and any possible attorney's fees or costs under the FCRA or similar state and local laws that could have been brought based on the allegations in Plaintiff's Complaint."  (*Id.* § 1.BB.)  Reed will release "all claims, known and unknown, of any kind arising out of or relating to" BBI and various affiliates.  (*Id.* § 1.Z–AA.)  BBI does not admit fault or liability.  (*Id.* § 11.A.)  The parties have additionally agreed that they will "represent to the Court that the Balfour Beatty Infrastructure documents have been changed as a result of this lawsuit."  (*Id.* § 9.E.)

As noted above, Reed filed the Motion for Preliminary Settlement Approval on June 6, 2022.  The hearing on the Motion was originally scheduled for September 16, 2022.  On September 12, 2022, the Court continued the hearing to November 4, 2022 and requested supplemental briefing regarding: (1) the selection of a Settlement Administrator; (2) whether a claims process is appropriate here; (3) whether requiring class members to opt out via regular mail and not electronic submissions is appropriate; and (4) why Legal Aid at Work is an appropriate *cy pres* recipient of unclaimed settlement funds.  (Doc. 42,) On September 22, 2022, the parties  requested a further continuance, and the Court continued the hearing on the Motion to January 13, 2023.  (Docs. 43, 44.)  Reed filed the supplemental briefing on October 12, 2022.  (Supp'l Mem.)  On January 6, 2023, the Court ordered Reed to file additional information regarding the allocation of damages among class members, which Reed provided on January 10, 2023.  (Docs. 46, 47.)

## II.     CONDITIONAL CERTIFICATION OF THE CLASS

Plaintiff requests that the Court preliminarily certify the proposed Settlement Class and California Settlement Class under Federal Rules of Civil Procedure 23(a) and 23(b)(3). "A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013).  Rule 23(a) "requires a party seeking class certification to satisfy four requirements: numerosity, commonality, typicality, and adequacy of representation." *Id.* (citing *Wal-Mart*, 564 U.S. at 350).  Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> > (1) the class is so numerous that joinder of all members is impracticable;
> >
> > (2) there are questions of law or fact common to the class;
> >
> > (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> >
> > (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  "If the court divides the class into subclasses [], then 'each subclass must independently meet the requirements for the maintenance of a class action.'"  *Bates v. United Parcel Serv.*, 204 F.R.D. 440, 443 (N.D. Cal. 2001) (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 630 (9th Cir. 1982)).

"Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*, 564 U.S. at 350.  This requires a district court to

conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 350–51 (cleaned up).

Additionally, "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Id.* at 345.  The Court may certify a class under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(3), by contrast, permits certification where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

## A.      The Proposed Classes Meet All Rule 23(a) Requirements

Both the Settlement Class and the California Settlement Class meet the requirements of Rule 23(a).

### 1.      Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  BBI estimates that the entire Settlement Class consists of approximately 500 members, with roughly 120 members within the California Settlement Class.  The proposed classes thus meet the numerosity requirement.

### 2.      Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the class

1  members have suffered the same injury." *Wal-Mart*, 564 U.S. at 349–50 (cleaned up).

2  The plaintiff must allege that the class members' injuries "depend upon a common

3  contention" that is "capable of classwide resolution." *Id.* at 350.  In other words, the

4  "determination of [the common contention's] truth or falsity will resolve an issue that is

5  central to the validity of each one of the claims in one stroke." *Id.*  "What matters to class

6  certification . . . is not the raising of common questions—even in droves—but rather, the

7  capacity of a class-wide proceeding to generate common *answers* apt to drive the

8  resolution of the litigation." *Id.* (cleaned up).

9         Here, Reed alleges that all Settlement Class members received the same deficient

10  form.  The central legal question is whether the form given to each of the class members

11  complies with the requirements of the FCRA and the ICRAA (for the California

12  Settlement Class).  *See Luna v. Hansen & Adkins Auto Transport, Inc.*, 2018 WL 3830238

13  at *2 (April 16, 2018) (certifying class based on claims of violation of FCRA's

14  "standalone" requirement where "Plaintiffs' claim is based on procedures and forms that

15  were used by Defendant for all job applicants").  This is plainly a question common to all

16  members that is capable of class-wide resolution.

17

18         **3.**    **Typicality**

19

20         Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be]

21  typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "[U]nder the

22  rule's permissive standards, representative claims are 'typical' if they are reasonably

23  coextensive with those of absent class members; they need not be substantially identical."

24  *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 613 (9th Cir. 2010) (en banc) (quoting

25  *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1020 (9th Cir. 1998)), *overruled on other*

26  *grounds*, *Wal-Mart*, 564 U.S. 338.  As to the representative, "[t]ypicality requires that the

27  named plaintiffs be members of the class they represent."  *Dukes*, 603 F.3d at 613 (citing

28  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)).  The commonality, typicality,

1  and adequacy-of-representation requirements "tend to merge."  *See Wal-Mart*, 564 U.S. at

2  349 n.5.

3       Here, Reed's claims, like those of the proposed class, arise from receiving the same

4  background check consent form from BBI. (*See* Mem. at 15.)  Reed is a member of the

5  Class he represents (the California Settlement Class, more specifically): he received a

6  background check consent form upon being offered a position with Balfour.  (*See* Mem. at

7  21.)  Therefore, typicality is met.

8

9       **4.**    **Adequacy**

10

11       Rule 23(a)(4) permits certification of a class action only if "the representative

12  parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P.

13  23(a)(4).  "Resolution of two questions determines legal adequacy: (1) do the named

14  plaintiffs and their counsel have any conflicts of interest with other class members and

15  (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of

16  the class?"  *Hanlon*, 150 F.3d at 1020.

17       First, the Court addresses the adequacy of Reed's counsel.  In this assessment, the

18  Court must consider "(i) the work counsel has done in identifying or investigating potential

19  claims in the action; (ii) counsel's experience in handling class actions, other complex

20  litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the

21  applicable law; and (iv) the resources that counsel will commit to representing the class."

22  Fed. R. Civ. P. 23(g)(1)(A).  Here, Reed asks that the Court appoint Christopher

23  McNerney, Ossai Miazad, Julio Sharp-Wasserman, and Jagan Sahafi of Outten & Golden

24  LLP as Class Counsel.  (Mem. at 1, 22.)  McNerney has provided a declaration describing

25  Outten & Golden's extensive experience litigating class actions across the country, as well

26  as his own, Miazad's, and Sharp-Wasserman's experience with labor and discrimination

27  class actions.  (McNerney Decl. ¶¶ 4–10, Doc. 39-2.)  McNerney's declaration also

28  describes his and his colleagues' efforts investigating and prosecuting Reed's claims,

leading up to a full-day mediation session on February 7, 2022 and subsequent negotiations that resulted in a settlement.  (*Id.* at ¶¶ 11–16.)  McNerney's and his colleagues' experience shows that they have knowledge of the applicable law in this area. Based on the experience and work of Reed's proposed Class Counsel, the Court concludes that they have satisfied the adequacy requirement.  The Court therefore appoints McNerney, Miazad, Sharp-Wasserman, and Sahafi of Outten & Golden LLP as Class Counsel in this action.

As to Reed's adequacy as Class Representative, his claims arise out of the same set of facts as the claims of the proposed classes, and his interest in obtaining the maximum recovery is coextensive with the interests of the class members.  Reed has no conflicts of interest with either the Settlement Class members or California Settlement Class members and is represented by experienced counsel.  Further, Reed worked with counsel through numerous fact-gathering conversations, by providing key documentary evidence in this case, and reviewing the complaint for factual accuracy.  (*Id.* ¶ 11.)  Reed has expended time and effort to prosecute this case and protect the interests of the proposed classes. Further, as noted above, he is represented by qualified, competent counsel.  Accordingly, the Court concludes that Reed is an adequate class representative.

### B.      The Proposed Class Also Meets the Rule 23(b)(3) Requirements

Reed seeks certification under Rule 23(b)(3).  (Mem. at 18.)  For the following reasons, the Court finds that certification of the proposed classes is appropriate under Rule 23(b)(3).

Under Rule 23(b)(3), a class action may be maintained if: "[1] the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and [2] that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. R. 23(b)(3)

(emphasis added).  When examining a class that seeks certification under Rule 23(b)(3), the Court may consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.[2]

*Id.*  The Court finds that the proposed classes satisfy both the predominance and superiority requirements.

### 1.  Predominance

"[T]he predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *Abdullah v. U.S. Sec. Associates, Inc.*, 731 F.3d 952, 964 (9th Cir. 2013) (cleaned up).  "Rule 23(b)(3) requires [only] a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Id.* (alteration in original).

Here, common questions of law and fact predominate as to both proposed classes because the central question is whether the disclosure form that Reed and other applicants received complies with the  FCRA's and the ICRAA's "clear and conspicuous" and

---

[2] This factor is not relevant in the context of certification for settlement purposes. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.") (cleaned up).

"standalone" requirements.  (*See* Mem. at 21.)  Cases that, like this one, are centrally
concerned with the lawfulness of a standard form that was distributed to all class members
are suitable for class treatment.  *See, e.g.*, *Bebault v. DMG Mori USA, Inc.*, 2020 WL
2065646, at *6 (N.D. Cal. Apr. 29, 2020) (finding predominance was satisfied when class
seeking damages under the FCRA for violations of the standalone requirement showed that
the named plaintiff and absent class members had consumer reports pulled by the
defendant under the same disclosure form).  Thus, common questions and common legal
remedies predominate here.

## 2.    Superiority

The Court also finds that a class action would be a superior method of adjudicating
Chen's class claims.  "The superiority inquiry under Rule 23(b)(3) requires determination
of whether the objectives of the particular class action procedure will be achieved in the
particular case."  *Hanlon*, 150 F.3d at 1023.  "This determination necessarily involves a
comparative evaluation of alternative mechanisms of dispute resolution."  *Id.*  Here, each
member of the proposed classes pursuing a claim individually would burden the judicial
system and run afoul of Rule 23's focus on efficiency and judicial economy.  *See Vinole v.
Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009) ("The overarching
focus remains whether trial by class representation would further the goals of efficiency
and judicial economy.").  It would be needlessly time consuming and redundant for each
absent class member to investigate and prove similar allegations and present the same
evidence.  Further, litigation costs would likely exceed potential recovery if each Class
member litigated individually.  "Where recovery on an individual basis would be dwarfed
by the cost of litigating on an individual basis, this factor weighs in favor of class
certification."  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir.
2010) (cleaned up).

1    Considering the non-exclusive factors under Rule 23(b)(3)(A)–(D), the Court finds

2   that class members' potential interests in individually controlling the prosecution of

3   separate actions and the potential difficulties in managing the class action do not outweigh

4   the desirability of concentrating this matter in one litigation.  *See* Fed. R. Civ. P.

5   23(b)(3)(A), (C), (D).  Therefore, the Court finds that Reed's proposed classes may be

6   certified under Rule 23(b)(3).

7

8    **D.    Rule 23(g) – Appointment of Class Counsel**

9

10    Under Rule 23(g), "a court that certifies a class must appoint class counsel."  Fed.

11   R. Civ. P. 23(g)(1).  As previously stated in this Order, the Court is satisfied that Reed's

12   counsel is adequate and thus may be appointed as Class Counsel in this case.

13    Having found that the proposed classes satisfy the elements of Rule 23(a) and

14   23(b)(3), the Court conditionally certifies the Settlement Class and the California

15   Settlement Class for settlement purposes only.

16

17   **III.   PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

18

19    To preliminarily approve a proposed class-action settlement, Rule 23(e)(2) requires

20   the Court to determine whether the proposed settlement is fair, reasonable, and adequate.

21   Fed. R. Civ. P. 23(e)(2).  In turn, review of a proposed settlement typically proceeds in two

22   stages, with preliminary approval followed by a final fairness hearing.  Federal Judicial

23   Center, *Manual for Complex Litigation*, § 21.632 (4th ed. 2004).

24    "To determine whether a settlement agreement meets these standards, a district

25   court must consider a number of factors, including: the strength of plaintiffs' case; the risk,

26   expense, complexity, and likely duration of further litigation; the risk of maintaining class

27   action status throughout the trial; the amount offered in settlement; the extent of discovery

28   completed, and the stage of the proceedings; the experience and views of counsel; the

presence of a governmental participant;[3] and the reaction of the class members to the proposed settlement." *Staton*, 327 F.3d at 959 (cleaned up). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). "'It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness,' and 'the settlement must stand or fall in its entirety.'" *Staton*, 327 F.3d at 960 (quoting *Hanlon*, 150 F.3d at 1026) (alterations omitted).

In addition to these factors, where "a settlement agreement is negotiated *prior* to formal class certification," the Court must also satisfy itself that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011) (cleaned up). Accordingly, the Court must look for explicit collusion and "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. Such signs include (1) "when counsel receive a disproportionate distribution of the settlement," (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (cleaned up).

At this preliminary stage and because class members will receive an opportunity to be heard on the settlement, "a full fairness analysis is unnecessary[.]" *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008). Instead, preliminary approval and notice of the settlement terms to the proposed class are appropriate where "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class

---

[3] This factor does not apply in this case.

representatives or segments of the class, and [4] falls within the range of *possible*
approval[.]" *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)
(cleaned up) (emphasis added); *see also Acosta v. Trans Union*, *LLC*, 243 F.R.D. 377, 386
(C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the
settlement need only be *potentially* fair, as the Court will make a final determination of its
adequacy at the hearing on the Final Approval, after such time as any party has had a
chance to object and/or opt out.") (emphasis in original).

In evaluating all applicable factors below, the Court finds that the proposed
Settlement Agreement should be preliminarily approved.

### A. <u>Strength of Plaintiff's Case</u>

The liability questions in this case are relatively straightforward, but Reed notes
some obstacles related to proving damages.  (Mem at. 12.)  Small class size limits the
potential recovery.  (*Id.* at 12–13.)  Further, the extent of possible recovery for both the
FCRA and the ICRAA claims could turn on the existence and the amount of actual
damages.  *See* 15 U.S.C. § 1681o(a)(1); Cal. Civ. Code § 1786.50(a)(1).  Proving actual
damages for all class members could be difficult, as the violation at issue is technical and
many Settlement Class members were not denied employment based on their background
check.  (Mem. at 13.)  Reed would also have difficulty proving willfulness for purposes of
awarding statutory damages under the FCRA.  (*Id.*)  The Court finds that given these
potential obstacles, this factor weighs in favor of granting preliminary approval.

### B. <u>Risk, Complexity, and Likely Duration of Further Litigation</u>

Reed argues that potential damages disputes endanger recovery here.  (*Id.*)
Additionally, pursuing ICRAA statutory damages would require additional expense and
prolong the litigation.  (*Id.* at 14.)  Settlement eliminates those risks, costs, and delay and

provides "a significant and certain payment, now." (*Id.*)  This factor therefore weighs in favor of granting preliminary approval.  *See, e.g.*, *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." (cleaned up)).

## C.  <u>Risk of Maintaining Class Certification</u>

The Court, in this Order, certifies the class for settlement purposes.  The difficulties surrounding proof of actual damages noted above pose a potential risk to maintaining class certification if the issue were litigated.  (Mem. at 14–15.)  Further, there always remains a risk that a class may be decertified, and these risks have been held to be "not so minimal" as to preclude a Court granting preliminary approval to a settlement agreement.  *See Rodriguez v. West Publishing Corp.*, 536 F.3d 948, 966 (9th Cir. 2009).

## D.  <u>Amount Offered in Settlement</u>

The Court finds that the amount offered in settlement is reasonable.  Total Settlement Amount of up to $350,000 for approximately 500 Settlement Class members, a substantial recovery for the claims at issue here.  (Mem. at 15.)

First, the recovery represents 21% of the maximum potential recovery of $1,700,000.  (*Id.*)  Reed's counsel has calculated the maximum potential liability here based on the $1,000 maximum possible individual recovery for FCRA statutory damages, and the $10,000 maximum possible individual recovery at post-liability hearings for ICRAA damages.  (McNerney Decl. ¶ 18.)  This percentage amount of the maximum potential liability for the entire Settlement Class represents a significant recovery given the risks in proving damages under the ICRAA noted above.  It is also a proportionate amount for a FCRA settlement.  *Cf. Hawkins v. S2Verify*, 2016 U.S. Dist. LEXIS 153576, at *3

(N.D. Cal. Nov. 4, 2016) (approving a settlement that valued each individual FCRA claim at approximately $250 before deductions).  More generally, a "settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (cleaned up).

Second, the settlement will provide class members with payments of approximately $133 to each non-California Settlement Class member and approximately $1,329 to each California Settlement Class member.  (Mem. at 16.)  This difference in the allocation of damages between California and non-California class members mirrors the ratio between maximum statutory damages under the FCRA and the ICRAA—the FCRA provides for statutory damages of between $100 and $1,000 per violation on a showing of willfulness, while the ICRAA provides for statutory damages up to $10,000.  (*Id.* at 5–6, citing 15 U.S.C. § 1681n(a)(1)(A), Cal. Civ. Code § 1786.50(a)(1)).  The ICRAA's statutory damages provision is unique among state consumer reporting statutes, so this allocation does not unfairly or disproportionately benefit the California Settlement Class.[4]  Further, per capita recovery for all class members is substantial here and exceeds recovery in comparable class settlements.  *See, e.g.*, *Feist v. Petco Animal Supplies, Inc.*, at *2 (S.D. Cal. Nov. 16, 2018) (granting final approval of settlement distributing roughly $20 to each class member who had not suffered any adverse employment action and $170 to each class member who had been subject to adverse employment action in a 15 U.S.C. § 1681 class action); *Watkins v. Hireright, Inc.*, 2016 WL 1732652, at *2 (S.D. Cal. May 2, 2016) (granting final approval of settlement distributing between $58 and $200 per class member in class action involving improper reporting of dismissed criminal charges and failure to provide full-file disclosures).

---

[4] On January 6, 2023, the Court issued an order requiring Reed's counsel to set forth in a declaration the legal research or authority that supported such a substantially higher recovery for the California Settlement Class members.  (Doc. 46.)  On January 10, 2023, Reed's counsel filed a declaration attesting that the ICRAA's statutory damages provision is unique and that "California law provides uniquely strong protections that justify allocating ten times the per-person damages to California Class Members."  (Doc. 47.)  The Court has confirmed that this is the case through independent research.

Third, that no portion of the fund will revert to Balfour also favors approval of the
settlement amount. *Cf. Rodriguez v. El Toro Med. Invs. Ltd. P'ship*, 2017 WL 11627501,
at *7 (C.D. Cal. Dec. 6, 2017) (finding a reasonable amount in a preliminary approval of
settlement based in part on the fact that no amount of the settlement would revert to the
defendants).

Fourth, the amount of the settlement also appears fair, adequate, and reasonable
given the claims released by Reed and the absent class members. Each class member will
release only claims that were or could have been asserted in the Complaint. (Settlement
Agreement §§ 1.BB, 10.A; Mem. at 17.) *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590
(9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related
claim in the future even though the claim was not presented and might not have been
presentable in the class action, but only where the released claim is based on the identical
factual predicate as that underlying the claims in the settled class action.") (cleaned up).
Because the scope of the release tracks the claims made in the operative complaint, that
weighs in favor of preliminary approval.

Fifth, because this action induced changes to Balfour's disclosure form, it has
resulted in meaningful relief that addresses and rectifies the very issue that gave rise to this
suit. (*See* Settlement Agreement § 9.E; Mem. at 17.) That also weighs in favor of
preliminary approval.

Last, the proposed *cy pres* distributions also appear to be appropriate. Pursuant to
the Settlement Agreement, any funds remaining after distribution to class members are to
be distributed in *cy pres* to Legal Aid at Work ("LAAW"), a non-profit legal aid
organization. (Settlement Agreement §§ 1.J, 3.B, 9.D; Mem. at 6.) The Ninth Circuit has
established clear standards on *cy pres* distributions in class action settlements. "Not just
any worthy recipient can qualify as an appropriate cy pres beneficiary." *Dennis v. Kellogg
Co.*, 697 F.3d 858, 865 (9th Cir.2012). Rather, there must be "a driving nexus between the
plaintiff class and the *cy pres* beneficiaries." *Id.* (quoting *Nachsin v. AOL, LLC*, 663 F.3d
1034, 1038 (9th Cir.2011)). "A *cy pres* award must be guided by (1) the objectives of the

underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff's class." *Id.* (cleaned up).  Here, Reed explains in supplemental briefing LAAW is an appropriate *cy pres* beneficiary of undistributed funds "because its mission aligns with the purpose of this litigation." (Supp'l Mem. at 5.)  Reed has provided a declaration from a LAAW attorney, Joan Graff, who attests that LAAW is dedicated to providing employment law assistance to low-wage workers in California and advocating and litigating on behalf of workers who have criminal records or have faced discrimination in various forms. (Graff Decl. ¶¶ 6–12, Doc. 45-5.)  Given the fit between LAAW's mission and the claims at issue in this action, the Court concludes that LAAW is a suitable *cy pres* recipient for unclaimed funds.

### 1.    *The Court's Concerns*

Although the Court does not approve the proposed amount of attorneys' fees and service payments at this stage, the Court raises its concerns with Reed's proposed awards. First, the Settlement Agreement provides for attorneys' fees of up to one third of the total settlement fund, subject to court approval. (Settlement Agreement § 9.1.)  In the Ninth Circuit, the benchmark for fees is 25% of the common fund. *See In re Bluetooth*, 654 F.3d at 942.  Before final approval, the court will "scrutinize closely the relationship between attorneys' fees and benefit to the class" and will not "award[] unreasonably high fees simply because they are uncontested." *Id.* at 948 (cleaned up).  Class Counsel must therefore make a sufficient showing justifying any upward departure from the Ninth Circuit's fees benchmark to be awarded one third of the settlement fund.

Second, the Settlement Agreement provides that Reed may apply for a service award of $10,000, subject to court approval. (Settlement Agreement § 9.2.)  In his Application for Fees and Costs, Reed must justify why the requested incentive payment is reasonable.  Reed is cautioned that the requested attorneys' fees and service award must be reasonable and justified in light of the circumstances of the case.

1

2     **E.  Stage of the Proceedings and Extent of Discovery Completed**

3

4          This factor requires the Court to evaluate whether "the parties have sufficient

5     information to make an informed decision about settlement."  *Linney v. Cellular Alaska*

6     *P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).  Discovery can be both formal and informal.

7     *See Clesceri v. Beach City Investigations & Protective Servs., Inc.*, 2011 WL 320998, at *9

8     (C.D. Cal. Jan. 27, 2011).  Here, Class Counsel interviewed Reed in detail and investigated

9     his claims to ascertain their merits and the size of the class.  (McNerney Decl. ¶ 11.)

10    Further discovery before mediation clarified which Balfour entities used the disclosure

11    form at issue and allowed the parties to pinpoint BBI as the single potentially liable

12    Balfour entity.  (*Id.* ¶ 14.)  Given these facts, the Court concludes that the parties possess

13    sufficient information to make an informed settlement decision.  *See In re Mego Fin. Corp.*

14    *Sec. Litig.*, 213 F.3d at 459 (plaintiffs had "sufficient information to make an informed

15    decision about the [s]ettlement" where formal discovery had not been completed but class

16    counsel had "conducted significant investigation, discovery and research, and presented

17    the court with documentation supporting those services").  Accordingly, this factor weighs

18    in favor of granting preliminary approval.

19

20    **F.  Experience and Views of Counsel**

21

22          As discussed above, Class Counsel have extensive experience litigating complex

23    class actions of this type.  Class Counsel are experienced and knowledgeable in this area of

24    the law and they have endorsed the settlement as fair, reasonable, and adequate.

25          Parties represented by competent counsel are well-positioned "to produce a

26    settlement that fairly reflects each party's expected outcome in litigation."  *See Munday v.*

27    *Navy Fed. Credit Union*, 2016 WL 7655807, at *9 (C.D. Cal. Sept. 15, 2016) (Staton, J.)

28

1  Accordingly, Class Counsel's endorsement also weighs in favor of approving the

2  settlement.

3

4  ### G. Reaction of Class Members to Proposed Settlement

5

6      Reed has not provided evidence of class members' reactions to the proposed

7  settlement.  However, the Court recognizes that the lack of such evidence is not

8  uncommon at the preliminary approval stage.  Before the Final Fairness Hearing, Class

9  Counsel shall submit a sufficient number of declarations from class members discussing

10  their reactions to the proposed settlement.

11

12  ### A.    Signs of Collusion

13

14      The Court finds no sign, explicit or subtle, of collusion between the parties.  Of

15  course, before final approval, the court will "scrutinize closely the relationship between

16  attorneys' fees and benefit to the class" and will not "award unreasonably high fees simply

17  because they are uncontested."  *In re Bluetooth*, 654 F.3d at 948 (cleaned up).  The Court

18  will also ultimately determine whether the requested amounts of service payments are

19  justified by the circumstances of this case.

20      Considering all of the factors together, the Court preliminarily concludes that the

21  settlement is fair, reasonable, and adequate.

22

23  ## IV.    APPROVAL OF THE PROPOSED SETTLEMENT ADMINISTRATOR

24

25      The parties agreed to appoint ALCS as the Settlement Administrator in this action,

26  subject to the Court's approval.  (Supp'l Mem. at 1–2.)  Reed has provided sufficient

27  documentation of ALCS's competence in carrying out the duties of a settlement

28  administrator.  (Davis Decl., Doc. 45-2.)  Moreover, other courts in this circuit have

approved ALCS as the settlement administrator in similar class action settlements. *See, e.g.*, *Der-Hacopian v. DarkTrace, Inc.*, WL 7260054, at *5 (N.D. Cal. Dec. 10, 2020) (ALCS appointed as settlement administrator in FCRA class action). Accordingly, the Court approves ALCS as the Settlement Administrator in this action.

## V. <u>PRELIMINARY APPROVAL OF CLASS NOTICE FORM AND METHOD</u>

For a class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). However, actual notice is not required. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

Pursuant to the Settlement Agreement, within 30 days of the Court's preliminary approval of the settlement Balfour will provide ALCS with the names of all class members, their last known addresses, last known personal email addresses, social security numbers, and the date associated with each member's background screening process at Balfour, to the extent that Balfour possesses that data. (Settlement Agreement §§ 1.G, 4.A.) Within 14 days of receiving this information, ALCS will mail the Class Notice and Claim Form to all class members by first-class regular mail. (*Id.* § 4.C.) Each Notice will include a QR code to facilitate administration of the settlement. (*Id.*) The parties anticipate that class members' email addresses will generally not be available in Balfour's records, but the Notice will also be sent by email in cases where Balfour has an email address. (*Id.*) If a Notice mailed to a class member is returned as undeliverable, ALCS will take reasonable steps to obtain the correct address, including up to two (2) skip traces, and will attempt a re-mailing to any class member for whom it obtains a more recent address. (*Id.* § 4.D.) The Supreme Court has found notice by mail to be sufficient if the notice is "reasonably calculated … to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent.*

*Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *accord Sullivan v. Am. Express Publ'g Corp.*, 2011 WL 2600702 at *8 (C.D. Cal. June 30, 2011) (quoting *Mullane*).  The Court finds that the proposed procedure for distributing the Notice satisfies this standard.

Generally, class members will have 60 days from the Notice date to submit a claim form or opt out of the settlement.  (*Id.* §§ 4.D, 5.A.)  After the Court expressed concern about requiring class members to submit claim forms to collect their payments, Reed provided supplemental briefing explaining that the claim form process is warranted to ensure that checks are sent to the correct addresses and to enable class members to select between electronic payments or mailed checks.  (Supp'l Mem. at 2–3.)  Further, the fact that the settlement here provides that no funds will revert to Balfour ensures that there are no incentives to suppress the claims rate—the net settlement amount will be distributed proportionally among class members who submit claim forms.  (*Id.* at 3.)  Last, the proposed Claim Form is simple—it requires only an address confirmation and a signature—of and can be submitted electronically using the QR code accompanying each Notice.  (Supp'l Mem. at 4; Proposed Notice and Claim Form, Doc. 39-4.)  The Court is satisfied that the claim process here is warranted and unlikely to suppress claim rates.

Reed has provided the Court with a copy of the proposed Notice.  (*Id.*; Amended Proposed Notice and Claim Form, Doc. 45-3.)  Under Rule 23, the notice must include, in a manner that is understandable to potential class members: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).  The proposed Notice includes all of this necessary information.  (*See* Amended Proposed Notice and Claim Form.)   Accordingly, the Court approves the form and method of Notice.

The Court requires that any motion for attorneys' fees, costs, and service award be filed **no later than 15 days before** the exclusion deadline—*i.e.*, 45 days from the notice

date.  Reed shall file his motion for final approval **no later than May 26, 2023**, including a brief responding to any submitted objections and otherwise summarizing the class members' participation in the settlement and the settlement administration to date.

## VI.    <u>CONCLUSION</u>

For the reasons discussed above, the Court:  (1) grants preliminary approval of the proposed class action settlement; (2) conditionally certifies the Settlement Class for settlement purposes only; (3) appoints Christopher McNerney, Ossai Miazad, Julio Sharp-Wasserman, and Jagan Sahafi of Outten & Golden LLP as Class Counsel; (4) approves the proposed Notice and Claim Form; (5) names Anthony Reed as Class Representative; and (6) approves ALCS as the Settlement Administrator.

The Court sets the following deadlines for administration of the settlement:

- The deadline for Balfour to provide the class list to ALCS is 30 days after the issuance of this Order.
- The deadline for ALCS to mail or email the Notice and Claim Form to class members is 14 days after receiving the class list.
- The deadline for Class Counsel to file a motion for attorneys' fees and Reed's application for a service award is 45 days after the Notice is sent.
- The deadline for class members to opt out or object is 60 days after the Notice is sent.
- The deadline for class members to submit their claim forms is 60 days after the Notice is sent.

The Court sets a Final Fairness Hearing for **June 16, 2023, at 10:30 a.m.**, to determine whether the settlement should be finally approved as fair, reasonable, and

adequate to class members.[5]  Reed shall file his motion for final approval no later than **May 26, 2023**.

DATED: January 11, 2023

## JOSEPHINE L. STATON

JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE

---

[5] The Court reserves the right to continue the date of the Final Fairness Hearing without further notice to class members.